UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ARSENIO C. BRUNDIDGE,<br><br>    *Petitioner*,<br><br>    v.<br><br>WARDEN JASON C. STREEVAL,<br><br>    *Respondent.* | CASE NO. 7:20-cv-00553<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Arsenio C. Brundidge, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, naming as the respondent the Warden of United States Penitentiary in Lee County, where Brundidge was housed at the time. (ECF No. 1.) Respondent filed a response in opposition to the petition, arguing that the petition should be dismissed in its entirety. (ECF No. 10.) Respondent submits that the Court lacks jurisdiction over the petition, and, alternatively, that the petition should be dismissed because Brundidge cannot overcome his procedural default and because his claims fail on their merits. Brundidge filed a reply, (ECF No. 12), which the Court also has considered.

For the reasons set forth herein, the Court concludes that it lacks jurisdiction over Brundidge's § 2241 petition. Even if it had jurisdiction, though, he is not entitled to relief under § 2241. For these reasons, the Court will deny his petition.

I. BACKGROUND

On September 9, 2015, Brundidge was convicted by a jury of two charges in the United States District Court for the Middle District of Georgia, in Case No. 4:15-cr-12-CDL.[1] One of his

---

[1] Respondent did not attach documents to his response, but cites to documents from the underlying case by docket number. The Court will follow a similar approach, and refers to docket entries from the underlying criminal case as "Dkt. No. __." Citations to docket entries in the case at bar will appear in parentheses as "ECF No. __."

convictions was for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), which is the conviction he challenges in this case; the other was for possession of cocaine, in violation of 21 U.S.C. § 844.[2] The sentencing court determined that Brundidge was an armed career criminal under 18 U.S.C. § 924(e), based on a number of prior convictions. (Presentence Investigation Report ("PSR") ¶¶ 30, 69, ECF No. 15; *see generally id.* ¶¶ 55–65 (detailing his adult convictions).) It sentenced him to 235 months' imprisonment on the gun charge and 12 months' imprisonment on the cocaine charge. Dkt. No. 44.

Brundidge appealed, Dkt. No. 50, and the Eleventh Circuit affirmed in an unpublished opinion. *United States v. Brundidge*, 708 F. App'x 608 (11th Cir. 2017), Dkt. No. 27. While the appeal was pending, Brundidge filed a *pro se* motion under 28 U.S.C. § 2255, alleging that he was no longer an armed career criminal after *Johnson v. United States*, 576 U.S. 591 (2015). Dkt. No. 72. In response, the United States filed a motion to stay the § 2255 motion until his appeal was final, which the court granted. Dkt Nos. 75, 76.

After the Eleventh Circuit ruled on his appeal, the United States moved to dismiss Brundidge's § 2255 motion. Dkt. No. 82. Later, Brundidge sought and received permission to amend his § 2255, and he later filed another amended § 2255, and the parties briefed the issues. Ultimately, the district court entered an order and judgment denying his § 2255. Dkt. No. 113.

Over six months later, Brundidge appealed. Dkt. No. 114. The Eleventh Circuit dismissed the appeal for lack of jurisdiction, reasoning that either the appeal was duplicative in light of his earlier direct appeal, or that it was untimely as to the order denying him § 2255 relief. Dkt. No. 114. Brundidge later filed a "Motion for Plain Error" in the sentencing court, Dkt. No. 123, as well

---

[2] The trial was bifurcated in part, and so the jury was separately instructed as to the two charges, and returned its verdict separately as to each charge. *See, e.g.*, Dkt. No. 29 (jury instructions as to the drug charge); Dkt. No. 35 (jury instructions as to felon-in-possession charge).

as other documents. The district court denied his requests for relief. Dkt. Nos. 124, 126.

The Clerk of this court received Brundidge's § 2241 petition on September 14, 2020. (ECF No. 1.) In it, Brundidge challenges the legality of his felon-in-possession conviction, relying on *Rehaif v. United States*, 131 S. Ct. 2191 (2019). (*See generally id.*)

## II. DISCUSSION

A prisoner generally must file a motion under § 2255 to collaterally attack the legality of his detention under a federal conviction or sentence. 28 U.S.C. § 2255(a); *Davis v. United States*, 417 U.S. 333, 343 (1974).[3] But the "savings clause," 28 U.S.C. § 2255(e),[4] allows a prisoner to challenge the validity of his conviction and/or his sentence by filing a § 2241 petition for writ of habeas corpus, if he demonstrates that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *see United States v. Wheeler*, 886 F.3d 415, 419 (4th Cir. 2018); *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). "[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion." *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997).

In the Fourth Circuit, § 2255 is inadequate and ineffective to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

---

[3] The Court omits internal quotation marks, alterations, and/or citations throughout this memorandum opinion, unless otherwise noted.

[4] This provision "is commonly referred to as the 'savings clause' as it arguably saves § 2255 from unconstitutionally suspending habeas corpus." *Lester v. Flournoy*, 909 F.3d 708, 711 (4th Cir. 2018).

3

*Jones*, 328 F.3d at 333–34; *see also Wheeler*, 886 F.3d at 429 (setting forth similar requirements for a challenge to a sentence under savings clause). If any one of the requirements is not met, the court is deprived of jurisdiction. *Wheeler*, 886 F.3d at 425. Brundidge bears the burden of proving subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

In conducting a § 2255(e) savings clause analysis, courts must apply the procedural law of the circuit where the petition is brought and must "look to the substantive law of the circuit where a defendant was convicted." *Hahn v. Moseley*, 931 F.3d 295, 301 (4th Cir. 2019). In this case, Brundidge's conviction occurred in the Middle District of Georgia, within the Eleventh Circuit. Thus, in evaluating his petition, the Court applies the substantive law of the Eleventh Circuit, but looks to Fourth Circuit law concerning the availability of § 2241 relief. *See id.*

Brundidge argues that in light of the Supreme Court's decision in *Rehaif*, his conviction under § 922(g) is invalid. (Pet. at 2, 7, ECF No. 1.) Section 922(g) makes it unlawful for certain individuals to possess firearms. "The provision lists nine categories of individuals subject to the prohibition, including felons . . . . A separate provision, § 924(a)(2), adds that anyone who '*knowingly*' violates the first provision shall be fined or imprisoned for up to 10 years." *Rehaif*, 139 S. Ct. at 2194; *see also* 18 U.S.C. § 922(g).

In *Rehaif*, the Supreme Court held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Based on *Rehaif*, Brundidge contends that his he is "actually innocent" of his § 922(g) conviction because the government did not prove, and the jury was not required to find, that he knew he was a felon at the time he possessed the

4

weapon. (Pet. at 7, 9–10.)[5] Thus, he contends that his conviction and resulting detention are illegal.

Respondent's opposition and request for dismissal first notes that respondent disagrees with the Fourth Circuit's "substantive framework" as to what claims can be brought in a § 2241 petition and contends that "*Jones* and its progeny are wrongly decided," preserving that issue for appeal. (Opp'n to Pet. 10–12, ECF No. 10.) Respondent next moves to dismiss the petition based on the Court's lack of jurisdiction. In particular, respondent concedes that Brundidge satisfies prongs one and three of the *Jones* test, (*id.* at 12 n.8), but argues that he fails to meet the second *Jones* requirement. (*Id.* at 16–18.) Respondent also contends that, even if the Court had jurisdiction, Brundidge has procedurally defaulted his claims and failed to show cause and prejudice or "actual innocence" so as to overcome that default. (*Id.* at 18–28.) Lastly, respondent maintains that Brundidge's claims fail on their merits. (*Id.* at 28–30.)

### A. This Court Lacks Jurisdiction Over Brundidge's § 2241 Petition.

The Court addresses first respondent's argument that Brundidge cannot satisfy the second prong of the *Jones* test. As part of his jurisdictional arguments, respondent dedicates a large chunk of his briefing to discussing the Fourth Circuit's decision in *Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019), and its potential impact on the second requirement of *Jones*. Respondent argues that that *Hahn* improperly—and in contrast to a number of prior Fourth Circuit decisions analyzing § 2241 claims under *Jones*—appears to treat the *Jones* requirements not as jurisdictional, but as if satisfying them entitles a petitioner to relief. He maintains that *Hahn* also "is ambiguous whether a showing that a change in substantive law rendered *this* defendant's conviction non-criminal is a component of *Jones*'s jurisdictional analysis or whether it is a separate merits question." (Opp'n to Pet. 12.)

---

[5] Brundidge also refers in his petition to his Second Amendment rights and to a "due process" error as a result of the underlying *Rehaif* error. The Court finds no merit in these arguments and does not discuss them further.

As another court explained, in addressing apparently similar briefing from respondent before it,

> Respondent submits [that] *Hahn* can be read in two ways: (1) as requiring a district court to assess a petitioner's specific conduct to determine whether it remains criminal under a newly pronounced interpretation of law; or (2) as stating that any change to the substantive boundaries of a criminal offense satisfies the second element of *Jones*, clearing the path for . . . a court to conduct a merits analysis of whether the petitioner's conduct truly was criminal or vacatur of his conviction is appropriate.

*Albritton v. Warden, FCI Petersburg*, No. 1:20CV302, 2021 WL 3432845, at *2 (E.D. Va. Aug. 4, 2021).

*Hahn* involved a change in the law quite different from *Rehaif*. *Rehaif* clarified the mens rea element of a § 922(g) offense (or, as some courts see it, added an element, *see Pleasant v. Streeval*, No. 7:20-CV-00233, 2022 WL 212704, at *2 (W.D. Va. Jan. 24, 2022)). By contrast, *Hahn* dealt with a change in Tenth Circuit law that disallowed a charge altogether unless that charge was based on different conduct than the defendant's other charges of conviction. *See generally Hahn* (discussing *United States v. Rentz*, 777 F.3d 1105 (10th Cir. 2015)). The way in which *Hahn* conducted its *Jones* analysis may have flowed in part from that distinction.

In any event, to the extent that some of the language in *Hahn* is inconsistent with prior published panel decisions, the Court must follow the earlier precedent. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2003) (en banc) ("When published panel decisions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from [the Fourth Circuit] sitting *en banc* or the Supreme Court."). And the Court's reading of those prior cases, which has been followed by many district courts in addressing *Rehaif* claims in the context of § 2241, is that *Jones*'s second prong requires an assessment of the petitioner's conduct to determine whether he was convicted of conduct that is no longer criminal,

6

effectively asking whether the petitioner still could be convicted of that crime after the change in law. *See Albritton*, 2021 WL 3432845, at *3 (noting the lack of clarity in *Hahn*, but following cases that have held that a change in the substantive law is itself insufficient to satisfy the second element of *Jones*). *Cf. Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (describing *Jones* as "delineating the circumstances in which § 2241 may be used to pursue" a claim that a defendant is "actually innocent of [an] offense yet procedurally barred from filing a § 2255 motion").

In particular, many district courts within the Fourth Circuit, including the undersigned and other judges of this court, have held that *Rehaif* did not change substantive law "such that the conduct of which the prisoner was convicted is deemed not to be criminal[,]" *Jones*, 226 F.3d at 334, because that conduct, being a felon in possession of a firearm, is still illegal. *See, e.g.*, *Asar v. Travis*, Civil Action No. 6:20-394-BHH, 2020 WL 3843638, at *2 (D.S.C. July 8, 2020) (concluding that the second *Jones* element was not satisfied because "being a felon in possession of a firearm remains a valid criminal offense" and petitioner admitted the facts essential to a conviction under § 922(g) by pleading guilty), *affirmed as modified*, 858 F. App'x 676 (4th Cir. Sept. 20, 2021) (affirming on the reasoning of the district court and citing to the district court's opinion). *See also Pleasant*, 2022 WL 212704, at *2 (noting that defendant had been convicted of multiple felony offenses in concluding that the second *Jones* prong was not satisfied); *Albritton*, 2021 WL 3432845, at *2 (concluding petitioner's conduct remained criminal); *Carrucini v. Warden of U.S.P. Lee*, No. 7:19CV00861, 2021 WL 431739, at *4 (W.D. Va. Feb. 8, 2021) (ruling that petitioner's *Rehaif* claim could not proceed under § 2241 because he could not establish the second *Jones* prong); *Erby v. Breckon*, No. 7:18-cv-00588, 2020 WL 1443154, at *7 (W.D. Va. Mar. 24, 2020) (collecting cases holding same), *aff'd*, No. 20-6814, 2021 WL 6101845 (4th Cir. Dec. 22, 2021); *Swindle v. Hudgins*, No. 5:19-cv-300, 2020 WL 469660, at *2 (N.D. W. Va. Jan. 29, 2020) ("Here, the crimes for which petitioner was convicted remain criminal offenses; accordingly, he

7

cannot satisfy the second prong of *Jones*.").[6] The undersigned's prior decisions holding the same include *Patterson v. Streeval*, No. 7:20CV340, 2021 WL 3861600, (W.D. Va. Aug. 30, 2021), and *Scrivens v. Streeval*, No. 7:20CV224, 2021 WL 3200985 (W.D. Va. July 28, 2021).

The Court recognizes that there have been a few decisions that have held to the contrary, including *Moore v. Warden of FCI Edgefield*, __ F. Supp. 3d __, 2021 WL 3828828 (D.S.C. Aug. 27, 2021). In *Moore*, like here, the petitioner had not pled guilty; he was convicted after a trial. The *Moore* court reasoned that the second *Jones* prong required it to answer a two-part question:

> The first part of the question is: What is "the conduct of which [Moore] was convicted"? As noted above, the pre-*Rehaif* understanding was that a § 922(g)(1) charge had the following elements: (1) the defendant had a prior felony conviction; (2) the defendant knowingly possessed a firearm; and (3) the firearm traveled in interstate commerce. *See United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (setting forth elements pre-*Rehaif*). That is the conduct of which Moore was necessarily convicted . . .
>
> Then, the second part of the question is: Does that conduct, standing alone, remain criminal post-*Rehaif*? *See Hahn v. Moseley*, 931 F.3d 295, 303 (4th Cir. 2019) ("A petitioner satisfies this standard if the substantive change in the law makes previously illegal conduct no longer a source of criminal liability."). Based on a reading of the relevant cases, the Court concludes that it does not. After *Rehaif* and the analysis set forth, an individual does not violate § 922(g)(1) by possessing a firearm that traveled in interstate commerce after having previously been convicted of a felony. That individual has only violated § 922(g)(1) if, at the time of the firearm possession, he also *knew* he had a prior felony conviction.

*Id.* at *4–5.

Based on that reasoning, the *Moore* court concluded that the petitioner had satisfied the

---

[6] As is evident from the foregoing citations, two of the cases (*Asar* and *Erby*) have been affirmed by the Fourth Circuit, but in unpublished, per curiam decisions. *See also Rhodes v. Dobbs*, 858 F. App'x 658 (4th Cir. Sept. 17, 2021) (affirming district court's dismissal of § 2241 petition raising a *Rehaif* claim for lack of jurisdiction based on a failure to satisfy the second *Jones* prong and finding no reversible error); *Allen v. Dobbs*, 855 F. App'x 162 (4th Cir. Aug. 10, 2021) (same). The Fourth Circuit has not spoken in a published decision on the issue.

second element of the *Jones* test, in addition to the first and third.[7] And it disagreed with the reasoning of cases like *Erby*, characterizing them as relying "on the big-picture argument that 'it is still illegal for felons to possess weapons and ammunition' to conclude that habeas petitioners in Moore's situation have not satisfied the savings clause." *Id.* at *5 (quoting *Erby*, 2020 WL 1443154, at *7).

The *Moore* court reasoned that "a habeas petitioner raising a *Rehaif* claim is not blocked by the savings clause simply because, in the broad sense, it is still illegal for felons to possess firearms. The specific issue for the savings clause analysis is whether "the conduct of which [the petitioner] was convicted" is still a source of criminal liability, not whether it is illegal to violate § 922(g)(1)." *Moore*, 2020 WL 1443154, at *5. The analysis set forth by the *Moore* court precisely tracks the language in *Jones,* and the Court understands its logic.

Nonetheless, this Court cannot find that the second prong is satisfied here and instead will join the broad consensus of courts within the Fourth Circuit that have held jurisdiction is lacking on similar facts. As the Fourth Circuit has repeatedly recognized in affirming decisions finding no § 2241 jurisdiction for a *Rehaif* claim, the petitioner's conduct here would still be criminal, even after *Rehaif*.

Just like the petitioners in many of the cases, Brundidge presents no evidence to support any assertion that he did not know he was a felon. Furthermore, there is ample proof in the record to support the knowledge-of-status element. On this issue, and although it involved direct appeals rather than collateral attacks, the Supreme Court's decision in *Greer* is instructive.

*Greer* was a consolidated appeal from a Fourth Circuit case, *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), and an Eleventh Circuit case, *United States v. Greer*, 798 F. App'x 483 (11th

---

[7] The respondent in *Moore* conceded that the court had jurisdiction to consider Moore's 2241 petition, 2021 WL 3828828, at *5, but the court also explained why that concession was proper and why it had jurisdiction.

Cir. 2020). In the Eleventh Circuit case, the defendant had gone to trial. Like Brundidge did here, Greer had stipulated that he was a felon, and he did not request or receive a jury instruction requiring that the jury find that he knew he was a felon when he possessed a firearm. *Greer*, 141 S. Ct. at 2096. Reviewing for plain error, the Court explained that to succeed on direct appeal, Greer had to show that, if the district court had correctly instructed the jury on the *mens rea* element, there is a "reasonable probability" that he would have been acquitted. *Id.* at 2097.

The Court noted that a defendant faces "an uphill climb" to make such a showing, reasoning that "[i]f a person is a felon, he ordinarily knows he is a felon." *Id.*; *see also id.* ("Felony status is simply not the kind of thing that one forgets.") (citing *Gary*, 963 F.3d at 423 (Wilkinson, J., concurring in denial of reh'g en banc)). As the *Greer* Court summarized, "demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." *Id.* at 2098 (citation omitted).

The defendants in *Greer* could not meet their burden, and the Court's explanation as to why is apt here:

> Before their respective felon-in-possession offenses, both Greer and Gary had been convicted of multiple felonies. Those prior convictions are substantial evidence that they knew they were felons. Neither defendant has ever disputed the fact of their prior convictions. At trial, Greer stipulated to the fact that he was a felon. And Gary admitted that he was a felon when he pled guilty. Importantly, on appeal, neither Greer nor Gary has argued or made a representation that they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms.

*Id.* at 2097–98.

The *Greer* court's reasoning applies with equal force to Brundidge's *Rehaif* claim. First, like Greer, Brundidge stipulated to being a felon, pursuant to *Old Chief v. United States*, 519 U.S. 172, 191 (1997), which allows a defendant to admit to his felony status, which then precludes the Government from offering other evidence to prove the prior conviction to the jury and spares the

10

defendant from having the "name and nature" of his prior felony convictions disclosed to the jury. *United States v. Williams*, 461 F.3d 441, 443 (4th Cir. 2006). That stipulation stated that "defendant has been convicted of crimes punishable by imprisonment for a term in excess of one year and that this fact may be presented to the jury to satisfy the convicted felon element of the violation of 18 U.S.C. Section 922(g)(1) in lieu of the submission to the jury of the defendant's prior felony convictions." Tr. at 13, Dkt. No. 66. And Brundidge does not dispute that he is, in fact, a felon.

Moreover, in Brundidge's case, there is ample additional evidence showing that he knew he was a felon. First of all, Brundidge previously had been convicted of *multiple* felonies, and was sentenced as an armed career criminal, as already noted. Those felonies included the following:

- A conviction for possession of cocaine with intent to distribute, for which he was sentenced, in April 2006, to ten years—four on confinement and the balance on probation. He served almost eighteen months before being paroled (PSR ¶ 56, ECF No. 15);

- A conviction for possession of cocaine, for which he was sentenced, in April 2007, to five years—two years' confinement and the balance on probation. He served approximately six months before being paroled, but his parole was later revoked, and he served an additional nine months (PSR ¶ 58);

- A conviction for possession of cocaine, for which he was sentenced, in September 2008, to seven years—two years' confinement and the balance on probation. He was paroled after approximately six months, but his probation was later revoked and he was ordered to serve two years, and he served approximately eighteen months (PSR ¶ 59); and

- Several convictions in three separate cases arising from 2011 events for possession of cocaine, theft by receiving stolen property, and possession of cocaine and marijuana with intent to distribute (among other crimes), for which he was sentenced, in February 2012, to ten years on each of those charges—two years' confinement and the balance on probation—to run concurrently. He served more than eighteen months before being paroled, (PSR ¶¶ 62–64).[8]

Brundidge's PSR also reflects a number of other convictions for which he was sentenced to exactly

---

[8] Based on the dates, Brundidge was incarcerated for eighteen months for the 2011 offenses at the same time he was also serving his revocation sentences (approximately eighteen months in each) stemming from his original 2006 and 2008 sentences.

twelve months. In light of his extensive criminal history, which respondent contends included "no less than nine qualifying felonies in Georgia," (Opp'n to Pet. 20, ECF No. 10), no reasonable jury would have believed that Brundidge did not know he had previously been "convicted in [a] court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

Furthermore, unlike some defendants who are convicted of a felony, but are not sentenced to more than a year, Brundidge had received sentences longer than a year and had served sentences longer than a year, as is noted in the foregoing description of some of his felonies. These facts, taken together, make it "virtually impossible to believe he did not know he had been convicted" of a felony. *United States v. Caldwell*, 7 F.4th 191, 213 (4th Cir. 2021) (concluding same in reviewing a *Rehaif* error for plain error on direct appeal, where the defendant had been convicted of multiple felonies, had not disputed them, and served sentences longer than a year); *cf. id.* (noting that there could be a case where a felon did not know he was a felon where, for example, he was previously convicted of a crime punishable by imprisonment for a term exceeding one year, but was sentenced to a term less than a year or to probation). Also, like the defendants in *Greer*, Brundidge has not pointed to any evidence that he could have presented at trial to show that he did not know he was a felon when he possessed the firearm. *See Greer*, 141 S. Ct. at 2098.

Based on the foregoing, the Court concludes that Brundidge cannot demonstrate that the conduct for which he was convicted is no longer a crime. *See Jones*, 328 F.3d at 334. Because jurisdiction over his § 2241 petition is lacking, *see Wheeler,* 886 F.3d at 423, the petition must be dismissed without prejudice.

### B. Brundidge's Petition Fails On Its Merits Regardless.[9]

Even if the Court were to conclude that it had jurisdiction, though, Brundidge's petition

---

[9] The Court does not address the parties' arguments concerning procedural default, or whether Brundidge can show cause and prejudice or "actual innocence" to overcome any default.

would still be denied, albeit on its merits and with prejudice. In particular, Brundidge is not entitled to habeas relief because he has not suffered any prejudice, because of any *Rehaif* error.

"For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A petitioner bears the burden of showing he is entitled to habeas relief and must show that any error had a "substantial and injurious effect" on his conviction. *Holland v. Florida*, 775 F.2d 1294, 1314 (11th Cir. 2014); *United States v. Smith,* 723 F.3d 510, 517 (4th Cir. 2013). Based on the record before the Court, Brundidge cannot meet this burden.

As the Court's analysis in the preceding section makes clear, Brundidge does not expressly allege in his petition that he did not know he was a felon at the time of the offense. In responding to the request for dismissal, he makes a somewhat confusing argument on this point:

> Mr. Brundidge does not deny that he was unqualified to open carry—in that he was unlicensed to openly carry a firearm. However, any allegation that he knew he belonged to the relevant category of persons barred from possessing a firearm . . . simply because he had served over 365 day in jail is unimagitive [sic]. Especially so when we factor in the Second Amendment. . . . [U]nder the Second Amendment, Mr. Brundidge—like any other American citizen—had a constitutional right to keep a firearm, but that he was without license made the public carry of a firearm unlawful. Thus, to assume that Mr. Brundidge—prior to his arrest for possession of a firearm; had the knowledge of his status—not as a felon, but as a "person[] barred from possessing a firearm," [*Rehaif*, 139 S. Ct. at 2200], in the face of the Second Amendment is unlikely.

(Pet'r's Reply 2–3, ECF No. 12.)

Brundidge's argument is wrong on several fronts. First of all, the felon-in-possession statute has been upheld against constitutional challenges, so it does not violate the Second Amendment to prohibit felons from possessing firearms. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the

13

possession of firearms by felons and the mentally ill . . . "); *United States v. Moore*, 666 F.3d 313, 317 (4th Cir. 2012) (joining with every other court of appeals that has addressed a Second Amendment challenge and holding that "§ 922(g)(1) [is] a constitutionally valid statute").

Second, the fact that Brundidge had served over 365 days in jail on any one offense—and he, in fact, served that amount of time on several individual offenses—*does* show that he had the relevant knowledge, which is simply knowledge that he had "been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). If he served more than a year in prison, then his crime was "punishable by imprisonment" for more than a year.

Third, to the extent Brundidge is arguing that *Rehaif* requires that he had knowledge of the prohibition on his possessing a firearm and not just knowledge of his status, his assertion is incorrect. Knowledge that the law prohibits felons from possessing a firearm is not required to prove a violation of § 922(g)(1). Indeed, in *Rehaif* itself, the Supreme Court made clear that a conviction did not require knowledge of the prohibition (or of the law), but only knowledge of the *status* that gives rise to the prohibition. 139 S. Ct. at 2197–98, 2200. The knowledge-of-status element is required to avoid criminalizing "an innocent mistake." *Id.* at 2197. The response to Brundidge's argument, then, is that "ignorance of the law is no excuse." *See id.* at 2198 (discussing that maxim and observing that the knowledge-of-status element is knowledge of a collateral legal fact and is different than knowledge of "the existence of a statute proscribing his conduct").

Furthermore, the record here contains ample evidence supporting the knowledge-of-status element, as already noted. In short, Brundidge cannot show a reasonable likelihood of a different result, let alone a "substantial and injurious" effect on his conviction. *See Greer*, 141 S. Ct. at 2100 (explaining that the plain error test applies to "discrete defects" in a criminal proceeding, such as "the omission of a single element from jury instructions"; such defects are not "structural errors"

14

subject to automatic reversal); *cf. Neder v. United States*, 527 U.S. 1, 17 (1999) (denying habeas relief where intervening law meant that a jury charge omitted a required element of the offense, where "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error [because] the erroneous instruction is properly found to be harmless"). Thus, Brundidge would not be entitled to habeas relief even if the Court had jurisdiction over his petition.

### III.  CONCLUSION

For the reasons stated above, the Court concludes that it lacks jurisdiction over Brundidge's petition, but that he is not entitled to relief under § 2241 regardless. Brundidge's petition will be dismissed without prejudice.

An appropriate order will be entered.

**ENTER**: This 18th day of March, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE